# EXHIBIT A
# WILLIAMS PROOF OF CLAIM

**RECEIVED**

APR 1 6 2018

**LEGAL SERVICES**

Filed: USBC - Southern District of Texas
EXCO Resources, Inc., et al., (B10)
18-30155 (MI)

ERI



0000000810

| Fill in this information to identify the case: |
|---|
| Debtor 1   EXCO Resources, Inc., et al |
| Debtor 2 (Spouse, if filing) |
| United States Bankruptcy Court for the: Southern District of Texas |
| Case number 18-30155 (MI) (Jointly Administered) |

Official Form 410
# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Mockingbird Midstream Gas Services, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Steven W. Soule, Hall, Estill, et al.
Name
320 S. Boston Ave., Suite 200
Number   Street
Tulsa                  OK       74103
City                  State    ZIP Code

Contact phone  918-594-0466

Contact email  ssoule@hallestill.com

Where should payments to the creditor be sent? (if different)

Tim Neuman, The Williams Companies
Name
One Williams Center, MD 50th Floor
Number   Street
Tulsa                  OK       74172
City                  State    ZIP Code

Contact phone  918-573-4880

Contact email  Timothy.Neuman@Williams.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ — __ __ __ — __ __ __ __ — __ __ __ __ __ __

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on ___/___/_____
                                                                         MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                           Proof of Claim                                    page 1

### Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $ __Unliquidated__. Does this amount include interest or other charges?
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

See attached Addendum

**9. Is all or part of the claim secured?**
☑ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____
Amount of the claim that is secured: $_____
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) ____%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

| | | Amount entitled to priority |
|---|---|---|
| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No ☐ Yes. Check one: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  04/16/2018
                  MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Tim | | Neuman |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Manager of Credit Services | | |
| Company | Mockingbird Midstream Gas Services, LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | One Williams Center, MD 50th Floor | | |
| | Number   Street | | |
| | Tulsa | OK | 74101 |
| | City | State | ZIP Code |
| Contact phone | 918-573-4880 | Email | Timothy.Neuman@Williams.com |

Official Form 410                       Proof of Claim                       page 3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** | |
| **EXCO RESOURCES, INC., et al.,**[1] | **Chapter 11**<br>**Case No. 18-30155** |
| **Debtors.** | **(Jointly Administered)** |

## ADDENDUM TO PROOF OF CLAIM

1. <u>Claimant</u>. Mockingbird Midstream Gas Services, LLC ("<u>Mockingbird Midstream</u>") and its parent Williams MLP Operating, LLC ("<u>Williams MLP</u>," and collectively with Mockingbird Midstream, "<u>Williams</u>").

2. <u>Pre-Petition Indebtedness.</u> EXCO Resources, Inc. and its subsidiary Exco Operating Company, LP ("<u>Debtor</u>") are indebted to Williams for an undetermined amount for breaches of contract and possible tort claims (the "<u>Claim</u>").

3. <u>Basis of Claim</u>. Debtor Exco Operating Company, LP ("Exco Operating") is an independent oil and natural gas producer in Texas. Exco Operating operates approximately 136 wells in the Eagle Ford basin in the State of Texas ("Wells"). Most, if not all, of the Wells are connected to the Eagle Ford Rich Gas System, the Eagle Ford Deep Oil System, the Eagle Ford

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: EXCO Resources, Inc. (2779); EXCO GP Partners Old, LLP (1262); EXCO Holding (PA), Inc. (1745); EXCO Holding MLP, Inc. (1972); EXCO Land Company, LLC (9981); EXCO Midcontinent MLP, LLC (0557); EXCO Operating Company, LP (1261); EXCO Partners GP, LLC (1258); EXCO Partners OLP GP, LLC (1252); EXCO Production Company (PA), LLC (2747); Raider Marketing GP, LLC (6366); and Raider Marketing, LP (4295). The locations of the Debtors' service address is: 12377 Merit Drive, Suite 1700, Dallas, Texas 75251.

Shallow Oil System and the Eagle Ford Treating System owned and operated by Mockingbird Midstream. As described below, Exco acquired the Wells from Chesapeake.

4.  Midstream companies like Mockingbird Midstream invest billions of dollars in developing the infrastructure necessary to gather, process, and transport domestic oil and natural gas. In exchange, the midstream companies receive payment — usually only if oil and gas is produced — along with *dedications* of the underlying oil and natural gas mineral interests and associated acreage. The fees charged to producers under the gathering and processing contracts are designed to provide midstream companies, over a period of time, a return on their capital investment. The dedications burden the mineral interests to provide assurance to midstream companies that the mineral interest holder (producer) and all successor mineral interest holders will be bound by the terms of the original bargain. Midstream companies undertake these capital investments, and their lenders finance these midstream projects, under the premise that the dedications are real property interests that bind successors to the mineral interests.

5.  Dedications also provide an economic benefit to the producer. Producers routinely transfer or otherwise divest themselves of all, or a portion of, their mineral interests after granting the dedication to the midstream company. During the course of a long-term gathering or processing contract, the producer/mineral interest owner may change several times, or the producer may divest itself of a material portion of its mineral interest. The dedications in the gas gathering agreements and contracts, like other gathering and processing contracts throughout the midstream industry, allow the midstream company to forego imposing more costly upfront requirements on the producer yet still retain its original bargained-for consideration even if the mineral interest changes hands. Regardless of any change to the mineral ownership, any

hydrocarbons produced from the subject acreage remain dedicated to the midstream company and subject to the terms of the gathering and processing contracts.

6. Mockingbird Midstream entered into a Gas Gathering Contract Cost of Service - Eagle Ford dated effective July 1, 2012 with Chesapeake Energy Marketing, Inc., Chesapeake Operating, Inc. and Chesapeake Exploration, LLC (collectively, "Chesapeake") (the "Contract").

7. The Contract includes a dedication in favor of Mockingbird Midstream of certain underlying oil and gas mineral interests and associated acreage owned by Chesapeake in Zavala, Frio, McMullen, LaSalle, Dimmit and Atascosa Counties, Texas where the natural gas that Chesapeake and Exco produce is located that Mockingbird Midstream gathers and transports under the Contract (the "Mockingbird Dedication"). The Mockingbird Dedication states in pertinent part as follows:

> Producers: (a) exclusively dedicate and commit to the performance of this Contract the Dedicated Properties[2] and the Dedicated Gas;[3] (b) represent that except as identified on the attached Exhibit B-1, the Dedicated Properties and Dedicated Gas are not otherwise subject to any gas gathering agreement or other commitment or arrangement that would permit or require the Dedicated Gas to be gathered on or delivered to any other pipeline system; (c) agree to deliver all of the Dedicated Gas to Gatherer's System at the Receipt Points; (d) agree to cause any existing or future Affiliates of Producers with interests in the Dedicated Properties to be bound by this Contract and to execute and join as a party to this Contract; (e) acknowledge and agree that the dedication and commitment made by Producers and their Affiliates under this Contract is a covenant running with the land and agree that

---

[2] "Dedicated Properties" under the Contract means: "all interests of Producers and their Affiliates (and their successors and assigns) in oil, gas, or mineral leases, contractual agreements, or other legal rights, insofar, and only insofar, as such interests (i) cover lands located within the Dedication Area and (ii) relate to the Applicable Formations, whether owned on the Effective Date or acquired after the Effective Date, save and except as reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract. *See* Contract.

[3] "Dedicated Gas" under the Contract means: "all Gas owned or Controlled by Producers or their Affiliates and produced from the Dedicated Properties through Dedicated Wells, save and except Gas reserved and excepted under Section 1.2 (Reservations from Dedication) of this Base Contract. If for any reason the contractual right of Producers or any of their Affiliates to Control any such Gas terminates, expires, or is suspended (as used in this Section 1.1(c), "Subject Gas"), then the Subject Gas will cease to constitute Dedicated Gas upon such termination or expiration and during any period of suspension." *See* Contract, ¶ 1.1(c).

-3-

Gatherer may file memoranda of this Contract in local land records substantially in the form shown in Exhibit D from time to time in its discretion, and Producers will enter into any such memoranda and cooperate with Gatherer in all reasonable respects in filing them; (f) covenant that (i) no subsequent transfer of any interest in the Dedicated Properties will be made without the transferred Dedicated Properties being made subject to the dedication obligation and this Contract, and (ii) at the time of any such transfer, the transferor will provide to Gatherer the transferee's acknowledgement of the dedication Gas Gathering Contract and this Contract, including Gatherer's right to file memoranda of this Contract and the transferee's acknowledgment in local land records; and (g) covenant to take such further action and to execute and deliver all such other agreements, certificates, instruments and documents as may be reasonably requested from time to time by Gatherer in furtherance of the intent of and to accomplish and evidence the purposes of this Contract and the dedication, including providing such information and making such additional, revised, or amended memoranda of this Contract and any other filings to meet the requirements of any state, county, parish, or other jurisdiction for filing and with respect to the validity and enforceability of the dedication.

8.     On or around July 2, 2013, Chesapeake conveyed part of the oil, gas and mineral lease interests subject to the Mockingbird Dedication to EXCO pursuant to a Purchase and Sale Agreement between the parties (the "Exco Interests"). Because a memorandum of the Mockingbird Dedication was filed of record before the Petition Date and is a covenant running with the land, the Exco Interests that EXCO purchased from Chesapeake are subject to the Mockingbird Dedication. Chesapeake retained approximately half of its oil, gas and mineral lease interests that are subject to the Contract.

9.     When Chesapeake sold the Exco Interests to the Debtor, the Debtor executed a letter agreement dated July 31, 2013, acknowledging that the oil, gas and mineral leases it was buying ("Properties") from Chesapeake "are subject to the obligation to deliver Dedicated Gas produced from the Properties under and as specified in (and as "Dedicated Gas" is defined in)" the Contract.

10.    The Debtor has been flaring gas from the Wells since just before the Petition Date and is in breach of the Contract and the Mockingbird Dedication. Additionally, the Debtor has

3497590.1:01000:02657

been delivering Dedicated Gas to parties other than Williams in violation of the Mockingbird Dedication. There is a matter pending before the Texas Railroad Commission relating to the gas flaring which was initiated by the Debtor. Williams asserts that it has suffered damages as a result of the actions of the Debtor in flaring gas and breaching the Contract. By filing this claim, Williams does not waive or release any claims or causes of action it may have against non-Debtor third parties that may be liable or jointly liable for the damages caused.

11. <u>Supporting Documents</u>. Due to the proprietary and confidential nature of the Contract, a copy of the Contract has not been attached hereto. Mockingbird Midstream will provide the Court with additional documents in support of the Claim as it becomes available. Mockingbird Midstream will make the Contract and letter agreement available to the Court, the Debtor, and interested parties upon reasonable notice to Mockingbird Midstream and subject to the entry of a non-disclosure agreement or for *in camera* review.

12. <u>Priority of Claim</u>. The Claim herein is filed without prejudice to any and all rights of Mockingbird Midstream to assert that any portion of these claims is entitled to administrative priority under Sections 503 and 507 of the Bankruptcy Code.

13. <u>Reservation of Rights/Amendments</u>. The execution and filing of this proof of claim is not and shall not be deemed: (a) a waiver or release of Mockingbird Midstream's rights against any other entity or person liable for all or any part of the claims asserted herein; (b) a consent by Mockingbird Midstream to the jurisdiction of this Court with respect to any proceeding commenced in this case against or otherwise involving Mockingbird Midstream (c) a waiver of the right to withdraw the reference with respect to the subject matter of the claims, any objection or other proceedings commenced with respect thereto or any other proceedings commenced in this case against or otherwise involving Mockingbird Midstream; (d) a waiver of any right to the

3497590.1:01000:02657

subordination, in favor of Mockingbird Midstream, of indebtedness or liens held by any creditors of any of the Debtor; or (e) an election of remedies which waives or otherwise affects any other remedy. Mockingbird Midstream expressly reserves its right to file any separate or additional proof of claim with respect to the claims set forth herein or otherwise (which proof of claims, if so filed, shall not be deemed to supersede this proof of claim unless otherwise so specified therein), to re-file this claim or file any separate or additional proof of claim to comply with the established procedures in the above-captioned Chapter 11 case with respect to the filing of proofs of claim to amend or supplement this proof of claim in any respect, including with respect to the filing of an additional or amended claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim in respect of additional claims or for any other reason.

14. <u>Notices.</u>   All notices with respect to this proof of claim should be sent to:

> Steven W. Soulé
> Cassia C. Carr
> Hall, Estill, Hardwick, Gable, Golden & Nelson, PC
> 320 South Boston Avenue, Suite 200
> Tulsa, Oklahoma 74103-3706

Dated:      April 16, 2018          By:  /s/ Steven Soulé

Steven W. Soulé, Bar No. 13781
Cassia Carr, Bar No. 32743
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
320 South Boston Avenue, Suite 200
Tulsa, OK 74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
ssoule@hallestill.com
ccarr@hallestill.com

**ATTORNEYS FOR CREDITOR MOCKINGBIRD MIDSTREAM GAS SERVICES, LLC**

- 7 -

COURT DOCKET

| 18-30155 | 188-1 | 4/17/2018 | SH |
|---|---|---|---|
| CASE NO. | COURT CLAIM NO. | DATE RETRIEVED | RECEIVED BY |